IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| In re: | § | Chapter 11 |
|---|---|---|
| | § | |
| **LA VILLITA MOTOR INNS, J.V.** | § | Case No. 10- |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

**To the Honorable United States Bankruptcy Judge:**

COMES NOW LA VILLITA MOTOR INNS, J.V. (the "Debtor" or the "La Villita Motor Inns"), the Debtor in the above captioned case (the "Case"), hereby files this Motion to Use Cash Collateral (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

## I.
## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The relief requested herein is authorized pursuant to 11 U.S.C. Section 363(c)(2) and (3) and Bankruptcy Rule 4001(b).

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

3. On December 17, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code").

4. The Debtor continues to manage and operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors'

committee has yet been appointed in this case by the United States Trustee. No trustee or examiner has been requested or appointed.

5. The statutory predicates for the relief requested herein are Sections 105(a) and 363(b) of the Bankruptcy Code.

6. The Debtor is a Texas joint venture, formed on or about April 14, 1980, that owns and operates a hotel located at 100 La Villita in San Antonio, Texas, known as the Riverwalk Plaza Hotel (the "Hotel"). The Debtor's joint venturers are S.A. Sunvest Hotels, Inc., a Texas corporation ("Sunvest") and Executive Motels of San Antonio, Inc., a Texas corporation ("Executive"), each with ownership interests of 50 percent. Liaquat A. Pirani ("Pirani") is the sole director and president of both Sunvest and Executive and is the managing partner and principal of the Debtor.

7. The Hotel has 129 guest rooms, including deluxe, junior and executive suites. The Hotel offers its guests a 24-hour fitness center, a 24-hour business center, and an outdoor heated swimming pool. The Hotel also has multiple convention rooms for meeting space, including a 2,349 square foot ballroom.

8. On or about September 25, 1998, the Debtor executed a Fixed Rate Note (the "Note") with AMRESCO Capital L.P. ("AMRESCO") in the original principal amount of $8.4 million, secured by certain real property and improvements, including the Hotel, as well as all accounts, inventory, all personal property located on the Hotel premises, and all rents and proceeds generated by operations of the Hotel, to the extent described in the Mortgage, Deed of Trust, and Security Agreement (the "Deed of Trust"); Security Agreement; Assignment of Leases and Rents; and Environmental Liabilities Agreement (collectively, the "Loan Documents").

9. The Note required monthly payments of $56,874.97 for a term of ten (10) years, beginning October 1, 1998, with a final balloon payment due September 1, 2008. The amount of the balloon payment is not reflected in the Note.

10. AMRESCO purported to effect certain transfers of the Loan Documents, allegedly resulting in GS Mortgage Securities Corporation II, Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trust") holding the Note, with GMAC Commercial Mortgage Corporation ("GMAC") serving as the master servicer and Lennar Partners, Inc. ("Lennar") as the special servicer, pursuant to the Trust's Pooling and Servicing Agreement (the "Servicing Agreement"). On or about October 2008, ORIX Capital Markets, LLC ("ORIX") began to represent to the Debtor that it had been appointed to replace Lennar as special servicer.

11. By virtue of the Loan Documents, the Debtor's primary assets—namely, its real estate, rental income, and revenue—are pledged to secure the Note, and the rents and revenues, as such, constitute the "Cash Collateral" of the Trust. The Debtor's rental of the Hotel's rooms and provision of services and accommodations are presently generating monthly rent and revenues.

12. The Debtor's real property assets (including land, improvements, and buildings) and personal property located on the Hotel premises are in the process of being appraised by Colliers PKF Consulting USA ("Colliers"). Colliers has indicated in writing, informally, to the Debtor that the property, on an as-is going-concern basis, is valued at approximately $13.1 million. The Debtor's calculation of its current balance under the Note is $6,052,066.52.[1] According to its most recent Payoff Statement, dated December 13, 2010, ORIX asserts that as of November 30, 2010, "the balance owing in connection with the Loan, not including attorneys' fees and expenses totaled

---

[1] The 150th District Court in Bexar County, Texas, has found the amount due under the Note was $6,052,066.52, and the Fourth Court of Appeals reversed, finding the amount due under the Note was $7,044,041.20.

**DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
P:\019028\001\DLI0001478V001.doc

$7,719,841.40."[2] Accordingly, the Trust is adequately protected by the substantial equity cushion on its real estate collateral.

13. In addition, Debtor has made, and currently maintains, deposits of escrows with the Trust. These escrow deposits are currently held by the Trust, and include escrows for taxes ($43,450.00) and property insurance ($11,412.00).

14. Until September 1, 2008, the date the balloon became due, the Debtor had not been in monetary default on the Loan Documents. To avoid default, the Debtor began attempting as early as January 2008 to obtain refinancing that would allow it to make the balloon payment. The Debtor engaged Jones Lang LaSalle, a reputed, nationwide broker, that handles refinancing on a large scale. As a result of Jones Lang LaSalle's efforts, several lenders responded. In fact, in August 2008, Bank of Texas sent a letter of commitment to refinance the loan but required the final payoff amount due on the balloon payment before it would fully commit. The Bank of Texas was unable to obtain the final payoff balance from the lender, nor were any other potential lenders able to obtain the final payoff balance. Despite Debtor's continued willingness to make its monthly interest-only payments while it sought a final payoff balance from ORIX so that it could effectively refinance, ORIX proceeded toward foreclosure.

15. To stop the foreclosure, the Debtor filed suit against ORIX, the Trust and other potential services on May 9, 2009, in the 150th Judicial District Court, Bexar County, Texas, for negligent misrepresentation, breach of contract, and fraud as well as seeking an accounting. The trial court entered judgment against ORIX and found that ORIX "intentionally interfered with [the Debtor's] ability to avoid foreclosure and pay off the note." The Fourth Court of Appeals reversed certain of the trial court's

---

[2] ORIX has asserted attorneys' fees and expenses as of November 30, 2010, in the amount of $850,946.89.

**DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
P:\019028\001\DLI0001478V001.doc

judgments and remanded; the Fourth Court of Appeals did not set aside the findings of the trial court as they pertained to ORIX's misrepresentation and fraud. Subsequent to its opinion, the Fourth Court of Appeals entered an order setting a hearing to appoint a receiver for the Debtor. Debtor's attempts at negotiation with ORIX have failed, thereby necessitating the filing of this Chapter 11.

16. Debtor's counsel has engaged in discussions with counsel for ORIX concerning the Debtor's use of cash collateral for its ongoing business operations; however, counsel for ORIX has not given the Debtor any indication that it will approve the Debtor's proposal. Accordingly, Debtor seeks and requests the Court's authority for such use of the cash collateral.

## III.
## RELIEF REQUESTED

### A. Debtor Requires Use of Cash Collateral to Operate

17. The Cash Collateral represents the sole source of the Debtor's revenue, which is necessarily derived from the payment of rents by Hotel guests. Unless the Debtor is granted authority to use Cash Collateral, it will be unable to pay its essential operating expenses. The Debtor will have no alternative but to cease operations, resulting in the conversion of this case to chapter 7. Such a conversion would dramatically affect the realizable value of the estate. Furthermore, if the Debtor is compelled to liquidate, the secured creditor would receive nearly all the assets of the Debtor, leaving little if any assets for distribution to other unsecured creditors and to the equity holders of the Debtor.

18. The Debtor requires immediate authorization to use the Cash Collateral in order to continue operating its business and preserve its value for the benefit of all creditors. By having immediate access to cash that is sufficient to enable the Debtor to

operate its business, the Cash Collateral as well as other collateral of the Trust will be preserved and enhanced. The use of Cash Collateral (including cash generated from the collection of accounts receivable) will be a significant source of working capital which will be used to operate the Debtor's business and, thereby, preserve and enhance the value of its estate.

19. The Debtor requests authority to use Cash Collateral on a preliminary basis to pay ordinary, reasonable and necessary operating expenses. Attached to this Motion as Exhibit "A" is a copy of the Debtor's proposed rolling seven-day budget for the period beginning on the Petition Date (the "Cash Collateral Budget"). The Debtor believes that approval of the Debtor's use of Cash Collateral in accordance with the Cash Collateral Budget will protect the interests of both Debtor and the Trust, and increase the prospects for the Debtor's successful reorganization. The Budget items shown are the usual and customary expenses encountered by Debtor in the operation of its Hotel.

### B.  Adequate Protection

20. For the use of the Cash Collateral, the Debtor proposes to adequately protect the interests of the Trust as follows:

   A.  To the extent the pre-petition liens of the Trust are valid and perfected, granting a post-petition lien(s) upon all after-acquired property of the estate of the type comprising the pre-petition collateral according to the same order of priority as that for the pre-petition liens, but only to the extent of any decrease in the value of the pre-petition collateral, and only to the extent of the amount of cash collateral actually used;

   B.  Restricting the Debtor's use of Cash Collateral to ordinary, reasonable and necessary expenses, pursuant to a periodic budget;

C.  Maintaining casualty and liability insurance policies on the Debtor's assets;

D.  Securing and maintaining all property of the Debtor and continuing to market and lease the Hotel accommodations and collect and account for all rental income;

E.  Providing the Trust with monthly reports reflecting; (i) monthly income and expenses, and (ii) monthly operating reports and financial statements; and

F.  Continue to provide for the insurance required by the Trust under the Loan Documents and to maintain an escrow for payment of taxes.

WHEREFORE the Debtor respectfully requests that the Court enter orders granting the relief requested herein and granting such other and further relief as is just and equitable.

Respectfully submitted this the 17th day of December, 2010,

>OPPENHEIMER, BLEND,
>HARRISON & TATE, INC.
>711 Navarro, Sixth Floor
>San Antonio, TX 78205
>Telephone: (210) 224-2000
>Facsimile: (210) 224-7540
>
>By:  ___*/s/ Debra L. Innocenti*___
>    Raymond W. Battaglia
>    State Bar No. 01918055
>    Debra L. Innocenti
>    State Bar No. 24046135
>
>ATTORNEYS FOR DEBTOR

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the above and foregoing document by First Class mail, postage prepaid, or by electronic mail on this the 17th day of December, 2010, addressed to the following parties:

Creditors Matrix

James G. Ruiz
Winstead
401 Congress Avenue
Suite 2100
Austin, Texas 78701
(512) 370-2818
jruiz@winstead.com
COUNSEL FOR ORIX

          ***/s/ Debra L. Innocenti***
DEBRA L. INNOCENTI